In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 18-3133

PATRICK J. DOHERTY,

*Plaintiff-Appellant,*

*v.*

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for WASHINGTON FEDERAL BANK FOR SAVINGS, *et al.*,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 CV 703 — **Joan B. Gottschall**, *Judge.*

———————

ARGUED MAY 14, 2019 — DECIDED AUGUST 6, 2019

———————

Before FLAUM, KANNE, and SCUDDER, *Circuit Judges.*

KANNE, *Circuit Judge.* Washington Federal Bank brought a default action against Patrick Doherty, John Farano, Jr., and Worth Conversion, LLC, for notes related to various real estate ventures. Doherty raised affirmative defenses on behalf of himself and Worth, but the bank dismissed Doherty and Worth from the action, without prejudice, after obtaining a default judgment against Farano. Doherty then attempted to

bring this suit against the bank with claims founded on similar grounds as his previously-raised affirmative defenses. But the Cook County Circuit Court determined that Doherty's claims were barred by *res judicata* thanks to the default judgment entered against Farano. Doherty appealed to the Illinois Appellate Court, but before his appeal was heard, Washington Federal was placed into the Federal Deposit Insurance Corporation's receivership. The FDIC removed this action to the district court, which adopted the Illinois Circuit Court's decision. Because *res judicata* does not bar Doherty's claims, we vacate and remand for further proceedings.

## I. BACKGROUND

Patrick Doherty and John Farano, Jr., formed Worth Conversion, LLC. In April 2006, Washington Federal Bank ("the bank") loaned Worth $400,000 in exchange for Worth's promissory note and Doherty and Farano's personal guaranties of the loan. Washington Federal extended the maturity date of the loan multiple times, but Worth eventually defaulted. The bank subsequently sued Worth, Farano, and Doherty in Cook County Circuit Court in March 2014 (the guaranty action). The twenty-seven count complaint also included counts related to other loans made to another entity affiliated with Farano and Doherty, F & D Services, Inc. But the bank eventually dismissed those counts and F & D Services from the suit.

Doherty is an attorney and he filed an appearance in the guaranty action on behalf of himself and Worth. In his answer to the bank's complaint, Doherty raised affirmative defenses, including that the bank extended the maturity date of the loan

without authorization, that the bank charged fees and an interest rate not agreed upon, and that the bank charged excessive fees.

Farano never appeared, however, and the trial court entered a default judgment for the loan balance against Farano for Count XXVI, which sought judgment on his personal guaranty of the loan, on August 27, 2014. The default judgment ordered:

> 1. [Washington Federal's] Motion for Default and Judgment is granted; 2. [The bank] has proven the damages it incurred and reasonable attorney's fees and costs; 3. Judgment is entered in favor of [the bank] and against Defendant John Farano Jr., in the TOTAL AMOUNT of $228,739.81 due under the Note; $2,804.50 due in attorney fees and $485.33 in legal costs; 4. There is no just reason to delay the enforcement of the judgment, appeal, or both.

On April 27, 2015, Doherty received a report from a forensic document examiner opining that his signature had been forged on loan extension paperwork in 2010. Doherty sent a copy of the report to the bank's counsel, advising them that he intended to file a suit for fraud and other claims. Around that time, the bank moved the trial court to dismiss its claims against Worth and Doherty from the action without prejudice. The trial court dismissed the bank's remaining counts (XXV—seeking judgment against Worth on default; and XXVII—seeking judgment against Doherty on his guaranty of the Worth loan) on June 15, 2015. Doherty did not object to this order.

Over a year later, on June 28, 2016, Doherty filed suit against the bank, its president, its corporate secretary, and its

attorneys, alleging breach of contract, forgery, excessive fees, fraud, and legal malpractice against the bank's law firm. He claimed that during the first trial (the guaranty action), he did not learn of the bank's alleged forgery early enough to take action before being dismissed. His suit sought to recover damages for the fees he incurred defending the guaranty action. The trial court dismissed Doherty's complaint, and he filed an amended complaint alleging the same facts and counts, but he alleged malicious prosecution instead of malpractice against the bank's legal counsel.

The bank and its attorneys moved to dismiss Doherty's amended complaint on the grounds of *res judicata*, lack of standing, and (on the malicious prosecution count) failure to state a claim. The trial court dismissed Doherty's suit, holding that most of Doherty's claims were barred by *res judicata* because he should have brought them in the guaranty action. The trial court also determined that he failed to state a claim for malicious prosecution. Doherty appealed to the Illinois Appellate Court. Before the court heard Doherty's appeal, however, Washington Federal was placed into the FDIC's receivership. The FDIC removed this action to the Northern District of Illinois under 12 U.S.C. § 1819(b)(2)(B).

## II. ANALYSIS

The district court adopted the Illinois trial court's ruling as its own. We therefore review the Illinois trial court's decision and analyze this appeal under Illinois law. *Baek v. Clausen*, 886 F.3d 652, 660 (7th Cir. 2018). On appeal, Doherty claims that the trial court erroneously dismissed his claims on the basis of *res judicata*. His main point seems to be that the bank's use of Farano's default judgment to defeat Doherty's claims transformed *res judicata* from a shield into a sword. In other words,

by holding that Doherty's claims were barred, the district court effectively allowed the bank to kill Doherty's fraud claims. The bank argues that the trial court correctly determined that *res judicata* barred Doherty's claims, but even if it does not, Doherty's claims should be alternatively dismissed for failure to state a claim.

"Whether a claim is barred by *res judicata* is a question of law that we review *de novo*." *Curtis v. Lofy*, 914 N.E.2d 248, 254 (Ill. App. Ct. 2009). "The party asserting *res judicata* as a preclusion to the second action bears the burden of showing with clarity and certainty what was determined by the prior judgment." *BankFinancial, FSB v. Tandon*, 2013 IL App (1st) 113152, ¶ 19.

### A. Counterclaims and Affirmative Defenses in Illinois Civil Procedure

A brief primer on Illinois civil procedure will help clarify the nature of Doherty's argument. The Illinois rules provide that a "plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause." 735 Ill. Comp. Stat. 5/2-1009(a). "[A] dismissal 'without prejudice' signals that there was no final decision on the merits and that the plaintiff is not barred from refiling the action." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 24. The rule also stipulates that a plaintiff's dismissal of its claims against a defendant "does not dismiss a pending counterclaim or third party complaint." 735 Ill. Comp. Stat. 5/2-1009(d). Illinois courts have held that a voluntary dismissal by the plaintiff is an appealable order. *Dubina v. Mesirow Realty Dev., Inc.*, 687 N.E.2d 871, 874–75 (Ill.

1997) (a voluntary dismissal terminates an action in its entirety and renders all final orders immediately appealable).

Doherty's claims were styled as affirmative defenses, not as counterclaims. That was probably because, under Illinois civil procedure, a defendant *must* raise affirmative defenses in the answer or reply. *See* 735 Ill. Comp. Stat. 5/2-613(d). Conversely, counterclaims are permissive in Illinois and can be brought in their own action. *See* 735 Ill. Comp. Stat. 5/2-608. *See Laue v. Leifheit*, 473 N.E.2d 939, 943 (Ill. 1984) (describing that section 2–608's language should be construed as establishing permissive counterclaims).

### B. *Res judicata in Illinois*

"The doctrine of *res judicata* bars the refiling of an action previously adjudicated on the merits when the action is directed against the same parties and involves the same claims." *DeLuna v. Treister*, 708 N.E.2d 340, 344 (Ill. 1999) (citing *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1204 (Ill. 1996)). "*Res judicata* promotes judicial economy by preventing repetitive litigation and [additionally] protects parties from being forced to bear the unjust burden of relitigating essentially the same case." *Piagentini v. Ford Motor Co.*, 901 N.E.2d 986, 990–91 (Ill. App. Ct. 2009) (quoting *Arvia v. Madigan,* 809 N.E.2d 88, 97 (Ill. 2004) (alteration in original)).

There are three requirements for *res judicata* in Illinois: "(1) a final judgment on the merits … entered in the first lawsuit by a court of competent jurisdiction; (2) an identity of causes of action exists; (3) the parties or their privies are identical in both lawsuits." *DeLuna*, 708 N.E.2d at 344. "The requirement of a final order or judgment is a 'critical' component in showing the applicability of *res judicata*." *Richter*, 2016 IL 119518 at

¶ 22 (citing *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 41). And the Supreme Court of Illinois has explained that "default judgments are always *res judicata* on the ultimate claim or demand presented in the complaint." *Hous. Auth. for La Salle Cty. v. Young Men's Christian Ass'n of Ottawa*, 461 N.E.2d 959, 963 (Ill. 1984).

Illinois courts have applied *res judicata* broadly. "The doctrine extends not only to what was actually decided in the original action, but also to matters which *could have been decided* in that suit." *Doe v. Gleicher*, 911 N.E.2d 532, 537 (Ill. App. Ct. 2009) (quoting *Rein,* 665 N.E.2d at 1204). However, "[e]quity dictates that the doctrine of *res judicata* will not be technically applied if to do so would create inequitable and unjust results. [It] should not be applied … where it would be fundamentally unfair to do so … [and] should only be applied as fairness and justice require." *Piagentini*, 901 N.E.2d at 990–91 (citations and quotations omitted). "Although it is recommended that the doctrine receive a liberal construction and should be applied without technical restrictions, it has also been recommended that the doctrine should not be applied so rigidly as to defeat the ends of justice." *Fed. Signal Corp. v. SLC Techs., Inc.*, 743 N.E.2d 1066, 1077 (Ill. App. Ct. 2001) (quoting *Thornton v. Williams*, 412 N.E.2d 157, 159 (Ill. App. Ct. 1980)).

### C. Doherty's Claims

The Illinois circuit court determined that *res judicata* applied because the default judgment against Farano constituted a final judgment on the merits. It stated that identity of parties existed because the bank named Doherty as a defendant in the guaranty action, and because the bank was originally the plaintiff in the guaranty action (and the other named defendants were its agents and attorneys). The

trial court determined that identity of causes existed because Doherty raised his affirmative defenses in the guaranty action, and the same underlying facts supporting his affirmative defenses provided the basis for his claims in the later lawsuit against the bank and its attorneys.

The circuit court's opinion relied on *Corcoran-Hakala v. Dowd* to establish that *res judicata* bars Doherty's claims. *See* 840 N.E.2d 286, 293–94 (Ill. App. Ct. 2005). In that case, the Illinois Appellate Court explained that the common law principle of compulsory counterclaim applies in some instances in Illinois, even though the statutorily-established rules of civil procedure explicitly hold that counterclaims are permissive: "*res judicata* bars a subsequent action if successful prosecution of that action would in effect nullify the judgment entered in the initial action." *Id.* at 294 (citing Restatement (Second) of Judgments § 22(2)(b) (1982)); *Carey v. Neal, Cortina & Associates*, 576 N.E.2d 220, 225 (Ill. App. Ct. 1991) (describing subsection 22(2)(b) of the Restatement as a "common law rule of compulsory counterclaim"). This is true if "the defendant's claim involves the same operative facts as the plaintiff's claim." *Id.* at 293–94 (citing *Torcasso v. Standard Outdoor Sales, Inc.*, 597 N.E.2d 772, 775 (Ill. App. Ct. 1992), *rev'd on other grounds*, 626 N.E.2d 225 (Ill. 1993)).

We conclude that *res judicata* should not apply in this case for two main reasons. First, none of the Illinois cases relied on by the circuit court or the FDIC address a situation like this one. And the most illuminating cases—if not exactly square with the posture of this case—suggest that applying the doctrine would be inappropriate. Second, applying the doctrine in this situation neither advances the purposes of *res*

*judicata* nor meaningfully serves the interests of judicial economy.

Illinois case law does not support an application of the doctrine in these circumstances. Two wrinkles in this case complicate the typical *res judicata* analysis and lead us to conclude that the doctrine should not apply here. First, most of the cases addressing *res judicata* in Illinois involve a situation in which a plaintiff in the first action attempts to bring the same or similar claims in a later action—not a situation in which a defendant to the first action brings affirmative defenses as independent claims in the second action. Second, the default judgment applied to a different defendant.[1]

The FDIC responds to Doherty's arguments on appeal by directing our attention to the broad and liberal application of *res judicata* found throughout Illinois case law. Doherty argues that because the circuit court dismissed him without prejudice on the bank's section 2-1009 motion in the guaranty action, *res judicata* should therefore not apply. The FDIC relies on *Rein* for the proposition that even though the final judgment on the merits did not apply to all the claims in the guaranty action, *res judicata* still applies. But *Rein* involved a case where, in the first action, plaintiffs received a dismissal with prejudice on some of their claims and voluntarily dismissed their remaining claims pursuant to section 2-1009. 665 N.E.2d at 1205. They later re-filed those claims in a second

---

[1] The FDIC does give examples of cases in which a defendant in the first action attempts to bring claims that would have been suitable for an affirmative defense in a later action, but this second factor distinguishes them. *See, e.g., Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 (7th Cir. 1986).

action, engaging in the classic claim-splitting that *res judicata* attempts to prevent. *Id.* at 1206. Here, Doherty neither made a section 2-1009 motion nor had a final judgment that addressed any of the bank's claims as they pertained to him or his defenses.

And although we have found no case that directly applies to this situation, a string of Illinois cases leads us to conclude that the doctrine should not apply here. "The Illinois Supreme Court has held that if the basis of dismissal against one party bears no relationship to the merits of the case, it is 'inappropriate to apply the doctrine of *res judicata* [against] another party to the action.'" *Curtis*, 914 N.E.2d at 260 (quoting *Downing v. Chicago Transit Auth,*, 642 N.E.2d 456, 460 (Ill. 1994)). In *Downing* the Supreme Court of Illinois held that an order that granted summary judgment in favor of an employee on statute-of-limitations grounds did not preclude a later suit based on a *respondeat superior* theory against his employer because the summary judgment order was not based on the merits of the case. According to the court, to label a summary judgment order based on the statute of limitations as "an adjudication on the merits would be the quintessential act of exalting form over substance." 642 N.E.2d at 460.

Similarly, in *DeLuna v. Treister*, the court refused to apply *res judicata* in a medical malpractice case for a defendant hospital after its doctor obtained an involuntary dismissal due to the plaintiff's failure to meet statutory pleading requirements. 708 N.E.2d at 348–49. The involuntary dismissal with prejudice barred the plaintiff's subsequent action against the doctor, but not the hospital. *Id.*

In *Leow v. A & B Freight Line, Inc.*, the court addressed the proper interpretation of Illinois Supreme Court Rule 273,

which explains the effects of involuntary dismissals. 676 N.E.2d 1284, 1286 (Ill. 1997). The court determined that an involuntary dismissal against a different party acted as an adjudication on the merits against another party only where "the prior dismissal must have caused the defendant to prepare to address the actual merits of plaintiff's claim." *DeLuna*, 708 N.E.2d at 347 (quotations omitted). *See Leow*, 676 N.E.2d at 1288.

The FDIC attempts to distinguish these cases because this case involves neither involuntary dismissal nor vicarious liability for employers. And, as we have noted, default judgments are typically considered final judgments on the merits for the purposes of *res judicata*. *Hous. Auth. for La Salle Cty.*, 461 N.E.2d at 963.

But we believe the principles of equity underlying this string of cases may be applied here. In the guaranty action, Doherty appeared, filed a response, and raised his affirmative defenses against the bank's claims. After obtaining its default judgment against Farano—and shortly after Doherty received the handwriting expert's report and threatened to bring a suit for fraud—the bank dropped its claims against Worth and Doherty and dismissed those defendants without prejudice. This posture ensured that the bank never had to address or defend itself against Doherty's fraud allegations. Accordingly, because the bank never had to address (and the circuit court likewise never had to consider) Doherty's fraud claims, we do not believe the default judgment against a different defendant barred Doherty's later action.

Applying *res judicata* in this situation also does not advance the purposes of the doctrine. One of those purposes is to prevent a second litigation from undermining the prior

judgment. *See* Restatement (Second) of Judgments § 22(2)(b) (1982) (explaining that a defendant who fails to interpose a permissible counterclaim in an action is precluded from bringing a subsequent action on that claim if the claim's successful prosecution "would nullify the initial judgment or would impair rights established in the initial action"). The FDIC argues that if Doherty were to succeed on his claims of fraud, it could undermine the circuit court's conclusion that Worth owed money to the bank and that Farano defaulted on his personal guaranty of the Worth loan. We find that argument unpersuasive. The FDIC provides no explanation for how Doherty would have standing to challenge Farano's default judgment. And at oral argument, Doherty himself even conceded that he likely has no standing to challenge the default judgment against Farano.

Additionally, Doherty's action here seeks redress for the bank's alleged fraud but does not challenge the default judgment entered against Farano. Even if Doherty manages to prosecute this action successfully, the default judgment against Farano would go undisturbed. Therefore, the bank's interest in the previous litigation—its judgment against Farano—would remain in place.

Similarly, as explained above, preventing claim splitting serves as one of the ends of applying *res judicata*. However, that concern is not implicated in a case like this, where Doherty was a defendant and did not dismiss the first action himself. *See Rein*, 665 N.E.2d at 1206 ("[P]laintiffs generally are not permitted to split their causes of action. The rule against claim-splitting, which is an aspect of the law of preclusion, prohibits a plaintiff from suing for part of a claim

in one action and then suing for the remainder in another action.").

Nor are concerns about judicial economy implicated by allowing Doherty's claims to proceed. In this case the circuit court never considered or weighed in on Doherty's fraud claims because the bank dismissed him without prejudice. The bank never had to litigate these claims in the guaranty action—addressing them now will not force the bank into redundant litigation.

Lastly, the FDIC encourages us to affirm the circuit court's dismissal of Doherty's claims on the alternative grounds that his complaint fails to state a claim. Because neither the Illinois trial court nor the district court have engaged Doherty's arguments, we decline to do so now. The district court should have the first opportunity to consider that question.

### III. CONCLUSION

Based on the foregoing, the circuit court incorrectly determined that Doherty's claims were barred by *res judicata*. Accordingly, we REVERSE the district court's dismissal of Doherty's claims and REMAND for further proceedings.