2025 IL App (1st) 241293-U

FOURTH DIVISION
Order filed: March 20, 2025

No. 1-24-1293

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BGC HOLDINGS LLC – ARLINGTON PLACE ONE, A SERIES OF BGC HOLDINGS, LLC; SAMUEL K. BOBBY, Individually; and PUTHENVEETIL BOBBY, Individually and as Trustee of the Puthenveetil K. Bobby Living Trust, dated October 17, 2002, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | No. 20 CH 6660 |
| v. | ) ) | |
| ROMSPEN MORTGAGE LIMITED PARTNERSHIP, | ) ) ) | Honorable Clare J. Quish, |
| Defendant-Appellee. | | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1 *Held*: The plaintiffs failed to demonstrate that the dismissal of their complaint as barred by *res judicata* was erroneous. The plaintiffs forfeited their argument that *res judicata* did not apply because they had alleged a continuing course of conduct, and their

No. 1-24-1293

allegations on that issue were also insufficient to establish continuing conduct. The plaintiffs also failed to show that the application of *res judicata* would be fundamentally unfair when the plaintiffs had an opportunity to raise their claims in an earlier proceeding.

¶ 2 Plaintiffs BGC Holdings LLC–Arlington Place One, a Series of BGC Holdings, LLC ("BGC"), Samuel K. Bobby ("Samuel B."), and Puthenveetil Bobby ("Puthenveetil B."), individually and as Trustee of the Puthenveetil K. Bobby Living Trust, dated October 17, 2002 ("Trust") (collectively, "Borrowers"), appeal a circuit court order dismissing their suit against Romspen Mortgage Limited Partnership ("Lender") as barred by *res judicata*. The Borrowers contend that the outcome of a prior action involving the parties should not bar their present suit because their claims allegedly concern a continuing course of conduct and because application of *res judicata* would be fundamentally unfair. We see no merit to the Borrowers' arguments and affirm.

¶ 3 The present appeal concerns two cases involving the Borrowers and the Lender. The first was a mortgage foreclosure action initiated by the Lender in United States District Court for the Northern District of Illinois, and the second is the instant action initiated by the Borrowers premised on alleged improper conduct on the part of the Lender in connection with the foreclosure proceedings.

¶ 4 In September 2018, after BGC defaulted on a loan secured to the Lender and personally guaranteed by Samuel B. and Puthenveetil B. (collectively, "Loan Parties"), the Lender filed a complaint for foreclosure in federal district court seeking to foreclose on its interest in a piece of commercial real property owned by BGC in Arlington Heights, Illinois ("Arlington Place One"). In May 2019, the district court entered a Judgment of Foreclosure and Sale. Following the foreclosure judgment, but prior to the sale, the Loan Parties and the Lender negotiated and entered into a Forbearance and Loan Extension Agreement ("Forbearance Agreement") to attempt to

avoid foreclosure and salvage the loan. Under the terms of the Forbearance Agreement, the Lender agreed that it would forbear from exercising remedies (including the judicial sale of Arlington Place One) for sixty days, reinstate the Arlington Place One loan, and extend the maturity date for two years. In return, the Loan Parties agreed to make a $1.6 million partial paydown of the loan.

¶ 5 During the negotiations leading to the Forbearance Agreement, the Loan Parties learned that the Lender had placed a lien on a property that the Trust owned in Arlington Heights ("1907 Property"). Because the Loan Parties had planned to refinance the mortgage on the 1907 Property in order to make the paydown on the Arlington Place One loan, the Loan Parties and the Lender agreed to include language in the Forbearance Agreement addressing the lien. Specifically, section 4(g) of the Forbearance Agreement provided:

> "(g) Liens Upon the [1907 Property]. Upon the request of Loan Parties, Lender shall use all commercially reasonable efforts to promptly remove or release any liens or encumbrances it may have against [the 1907 Property] and irrespective of such request shall do so sufficiently before the [May 26, 2020,] Closing Date so that the Loan Parties can use such property as collateral to obtain funds to support the transactions contemplated by this Agreement."

¶ 6 In April 2020, following the execution of the Forbearance Agreement, the Loan Parties sent an email to the Lender asking that the lien on the 1907 Property be lifted pursuant to section 4(g) of the agreement. In an emailed response, the Lender stated:

> "[W]e can certainly work on it—here is the issue—we need some proof that y'all are likely going to close on a deal—otherwise, we lose our lien priority if you are not going to be

successful. Are you planning on completing a refinancing in the near term with respect to that property, and how much of that money will be coming to [the Lender]?"

In response, the Loan Parties provided the Lender with term sheets from prospective lenders from February 2020 as proof that it was in the process of obtaining financing. The Lender deemed that proof insufficient and ultimately refused to remove the lien. The Loan Parties did not make the paydown payment by the May 2020 closing date required by the Forbearance Agreement.

¶ 7 Several months later, and two days before the scheduled judicial sale of Arlington Place One, the Loan Parties filed an emergency petition to stay the sale, arguing that their inability to make the paydown and forestall the foreclosure sale was the result of the Lender's breach of the Forbearance Agreement. The district court denied the emergency motion, finding that the Lender had indicated that it was willing to release the lien on the 1907 Property if the Loan Parties showed that they were likely to obtain the financing they sought, but there was no evidence that the Loan Parties had provided such proof.

¶ 8 On July 28, 2020, Arlington Place One was auctioned and sold to the Lender. A week later, prior to confirmation of the sale, the Loan Parties filed a motion for leave to file a counterclaim for specific performance of the Forbearance Agreement or, in the alternative, damages for breach of contract resulting from the Lender not removing the lien upon their request. The Loan Parties also alleged in the motion that "[t]he facts that form the basis of the Counterclaim all recently arose" and that they should be granted leave to file the counterclaim because "they may be barred by *res judicata* from presenting these claims in a subsequent lawsuit they may seek to file based on the same set of operative facts." In response, the Lender opposed the motion on several grounds and also filed a motion seeking confirmation of the sale and immediate possession of and title to Arlington Place One.

¶ 9 In a September 24, 2020, order, the district court denied the Loan Parties' motion for leave to file their counterclaims and granted the Lender's motion to confirm the judicial sale. The court first discussed the circumstances surrounding the denial of the Loan Parties' motion to stay the judicial sale, recalling that it had denied the motion because the evidence presented did not suggest that the Lender had breached the Forbearance Agreement. Rather, the court observed that the Lender had promptly responded to the Loan Parties' request for the Lender to lift the lien by asking for some proof that the Loan Parties were likely to obtain the financing they were seeking. The court further noted that, at the time, the Loan Parties had "offered no evidence that they ever responded to this email or offered [the Lender] any 'proof' that they were 'likely going to close on a deal' to obtain funding."

¶ 10 Turning to the proposed counterclaim, the district court stated that "[n]othing in [the Loan Parties'] motion for leave suggests a cure for this defect, yet they propose a counterclaim asserting the very theory I rejected as inconsistent with the evidence." Further, the court found that the Loan Parties' assertion that the Lender had an unconditional obligation to remove the lien upon request was "at odds with the express terms of the forbearance agreement, which requires only that [the Loan Parties] use 'commercially reasonable efforts' to remove the lien at [the Lender's] request." The court continued by finding that "the evidence reveals that [the Lender] attempted to do just that, expressing its willingness to release the lien once it was satisfied that its interests were adequately protected, and explaining to [the Loan Parties] the information it needed to ensure that they would be." The court also found that the Lender's request for proof of imminent financing was "facially reasonably" and that "nothing in [the Loan Parties'] motion for leave hints at any basis for concluding that [the Lender's] efforts were not commercially reasonable or explains how

resolution in their favor of facts they claim are disputed would entitle them to judgment on any theory consistent with the terms of the forbearance agreement." Notably, in a footnote the court commented that the Loan Parties' concern that their breach-of-contract claim may be barred by *res judicata* in future proceedings if they were unable to raise it then were "unwarranted" because the federal foreclosure proceedings arose out of the Loan Parties' default on their loan from the Lender, while the facts that formed the basis of the proposed counterclaim all recently arose and post-dated the foreclosure judgment resulting from that default. The court, therefore, denied the Loan Parties' motion for leave to file their counterclaim and granted the Lender's motion to confirm the judicial sale of Arlington Place One. The following day, the court entered an order confirming the sale.

¶ 11 The Loan Parties appealed the district court's September 24, 2020, order to the United States Court of Appeals for the Seventh Circuit. As set forth in the Seventh Circuit's opinion, in their appeal the Loan Parties presented two arguments that the district court misinterpreted the terms of the Forbearance Agreement and erred in concluding that the Lender did not violate the agreement. See *Romspen Mortgage Ltd. Partnership v. BGC Holdings LLC - Arlington Place One*, 20 F.4th 359, 371-73 (7th Cir. 2021). First, the Loan Parties asserted that the Lender did not make "commercially reasonable efforts" to remove the lien. *Id.* at 371. On that point, the Seventh Circuit examined the facts at issue and the district court's reasoning and held that the district had not misinterpreted that term and had not erred in concluding that the Lender had acted in a commercially reasonable manner by requesting proof of imminent financing before removing the lien. *Id.* at 372. In its second argument, the Loan Parties contended that, regardless of the phrase "commercially reasonable efforts," the second clause of Section 4(g) of the Forbearance Agreement imposed an unconditional obligation on the Lender to remove the lien prior to the

closing date, whether or not they had requested it. *Id.* Applying Illinois law, the Seventh Circuit rejected that argument and held that the district court had correctly determined that the phrase "commercially reasonable efforts" applied regardless of whether or not the Loan Parties had requested that the lien be removed. *Id.* at 373. Accordingly, the Seventh Circuit concluded that the district court had not erred in denying the Loan Parties' motion for leave to file their counterclaim. *Id.*

¶ 12       On November 6, 2020, prior to the issuance of the Seventh Circuit's opinion, the Loan Parties and the Trust (together, "Borrowers") filed a three-count complaint in the Circuit Court for Cook County, Illinois, which is the subject of the present appeal. In the complaint, the Loan Parties sought specific performance of the Forbearance Agreement and, alternatively, damages for breach of contract regarding the Lender's alleged breach of the agreement by refusing to remove the lien on the 1907 Property, while the Trust added a third claim for damages for slander of title related to the Lender's filing of the lien on the 1907 Property.

¶ 13 In October 2022, the Lender filed a combined motion to dismiss under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)) seeking dismissal on several grounds under sections 2-615 and 2-619 of the Code. Among other things, the Lender asserted that dismissal under section 2-619(a)(4) was appropriate because the Borrowers' specificperformance and breach-of-contract claims were actually decided in the prior federal court proceeding and the slander-of-title claim could have been raised in that action, rendering all three claims barred by the doctrine of *res judicata*. In response, the Borrowers argued, in relevant part, that the specific-performance and breach-of-contract claims should not be barred by *res judicata* because the district court opined in its footnote that the claims would not be so barred, and the Borrowers argued that the slander-of-title claim was not barred because it was based on

different allegations of forgery and the improper recording of a lien, rather than breach of contract, and, therefore, was not identical to the proposed counterclaims in the federal court proceeding. The Borrowers also contended that the application of *res judicata* to its claims would be inequitable because the footnote regarding the Loan Parties' *res judicata* concerns in the district court's order denying leave to file their counterclaims suggested that the court did not believe that its denial of leave to file would have a preclusive effect in future litigation and the court may have ruled differently if it knew that its ruling could act to prevent the Borrowers from raising their claims in the future.

¶ 14 On August 17, 2023, the court entered an order stating that it had held a hearing on the Lender's motion to dismiss and that it would take the matter under advisement. However, no transcript of that hearing appears in the report of proceedings.

¶ 15 On October 16, 2023, the circuit court entered an order granting the Lender's motion to dismiss under section 2-619(a)(4), finding that all three requirements for the application of *res judicata* had been satisfied. In relevant part, the court found that the state and federal court actions were "based on the very same common core of operative facts—the parties' Forbearance Agreement and [the Borrowers'] argument that [the Lender] breached Section 4(g) of that agreement by failing to remove the lien on the 1907 Property upon [the Borrowers'] request." The court further observed that the Borrowers' specific-performance and breach-of-contract claims were barred because the federal courts had decided those exact issues on the merits and that the Borrowers' slander-of-title claim was barred because it was based on the same operative facts and could have been raised along with those other claims. The circuit court also found that dismissal on *res judicata* grounds would not be unjust or inequitable because the Borrowers had the

opportunity to present their claims and evidence in the prior proceedings and the district and circuit courts reviewed the claims and rejected them on their merits.

¶ 16 On May 30, 2023, prior to the circuit court's order granting the Lender's motion to dismiss, the Borrowers filed a motion for leave to file an amended complaint adding additional claims and defendants. After the dismissal of the initial complaint, the parties briefed and argued the Borrowers' motion for leave to amend. On May 21, 2024, the circuit court issued an oral ruling denying the Borrowers' motion, finding that the claims raised in the proposed amended complaint arose from the same operative facts that were alleged in the initial complaint and would, therefore, still be barred by *res judicata*, rendering amendment of the complaint futile. This appeal follows.

¶ 17 The Borrowers raise two arguments on appeal, asserting that *res judicata* should not operate to bar their claims in this case (1) because they alleged a continuing course of conduct that extended beyond the judgment in the prior federal case and (2) because to do so would be fundamentally unfair when they were not granted the opportunity to fully litigate their claims in the previous action. We find the first argument to have been forfeited and the second to be without merit.

¶ 18 "When ruling on a section 2-619 motion to dismiss, a court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Lane v. Kalcheim*, 394 Ill. App. 3d 324, 329 (2009) (citing *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997)). "The motion should be granted only if the plaintiff can prove no set of facts that would support a cause of action." *Id.* (citing *Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago,* 189 Ill. 2d 200, 206 (2000)). We apply *de novo* review to an order granting a motion to dismiss under section 2-619. *Id.* (citing *Parks v. Kownacki*, 193 Ill. 2d 164, 175 (2000)).

¶ 19 Section 2-619(a)(4) allows for the dismissal of an action if it is barred by a prior judgment. 735 ILCS 5/2-619(a)(4) (West 2022). Specifically, "[u]nder the doctrine of *res judicata,* a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Lane*, 394 Ill. App. 3d at 329 (citing *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996)). "*Res judicata* applies to bar issues that were actually decided in the first action, as well as matters that could have been decided." *Id.* (citing *La Salle National Bank v. County Board of School Trustees*, 61 Ill. 2d 524, 529 (1975)). "[T]hree requirements must be satisfied for the doctrine of *res judicata* to apply: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of causes of action; and (3) an identity of the parties or their privies." *Id.* at 329-30 (citing *Hudson v. City of Chicago*, 228 Ill. 2d 462, 470 (2008)).

¶ 20 In their first issue, the Borrowers concede that the first and third requirements for the application of *res judicata* are satisfied and contest only whether the causes of action are identical. Generally, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998). However, the Borrowers contend that an exception to that rule applies in the present case because the conduct underlying their claims in the instant action continued beyond the final judgment in the federal court action and that "an earlier judgment relating to a course of conduct 'does not bar claims for continuing conduct complained of in the second lawsuit that occur[s] after judgment has been entered in the first lawsuit.' " (Alteration in original.) *Wilmington Savings Fund Society, FSB as Trustee of Residential Credit Opportunities Trust III v. Barrera*, 2020 IL App (2d) 190883, ¶ 19 (quoting *D'Last Corp. v. Ugent*, 288 Ill. App. 3d 216, 222 (1997)). "Put another way, one

course of conduct may give rise to a second cause of action when that conduct persists after the original judgment." *Id.* (citing *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327-28 (1955)).

¶ 21 However, the Borrowers did not present this continuing-conduct argument in the circuit court, and it was not litigated by the parties or decided by the court in connection with the Lender's motion to dismiss. As a consequence, the argument has been forfeited. See *Tebbens v. Levin & Conde*, 2018 IL App (1st) 170777, ¶ 47 (holding that a party forfeited its continuing-conduct argument on appeal when it did not present the argument in the trial court); see also *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) ("It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal."); *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 81 ("[O]ur function is to review rulings and judgments of the circuit courts and generally we will not pass on any question as to which the circuit court failed to make a decision.").

¶ 22 Additionally, even if we were to ignore their failure to make this argument below, the Borrowers still would not be entitled to relief. In their brief on appeal, the Borrowers cite several specific allegations as evidence of continuing conduct (allegations that, incidentally, only appear in their proposed amended complaint, which they were denied leave to file, arguably making the allegations irrelevant), including that there is ongoing confusion regarding the lien on the 1907 Property and that the presence of the lien has prevented the Borrowers from refinancing existing mortgages. However, those allegations only assert additional *harm* from the Lender's placement of the lien on the 1907 Property during the prior foreclosure action. They do not allege new harmcausing conduct. Because they concern a single act that was known to the Borrowers during the prior litigation, these allegations do not demonstrate a continuing course of conduct sufficient

to avoid the application of *res judicata*. *Cf. Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003) ("A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation.").

¶ 23 In their second issue, the Borrowers contend that the circuit court erred in granting the Lender's motion to dismiss because applying *res judicata* to bar their claims would be unfair, citing the rule that "[e]quity dictates that the doctrine of *res judicata* should not be technically applied if to do so would be fundamentally unfair or would create inequitable or unjust results." *McHenry Savings Bank v. Moy*, 2021 IL App (2d) 200099, ¶ 38 (citing *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001)). The Borrowers rely on two particular cases applying this principle, but both are distinguishable from the present case, and we see no fundamental unfairness in the application of *res judicata* to bar the claims raised in the Borrowers' complaint.

¶ 24 In *Nowak*, our supreme court held that it would be fundamentally unfair to bar a plaintiff's state law claim that had been dismissed from an earlier federal court case on grounds of lack of jurisdiction. 197 Ill. 2d at 392. In that case, *res judicata* did not apply because, "[a]lthough the claims in question may be initially regarded as a single cause of action for application of *res judicata,* subsequent events may alter their status" and the federal court's dismissal of the claim for lack of jurisdiction "in effect reserved plaintiff's right to pursue the matter in state court." *Id.* at 392-93. The court explained that such a result was consistent with the principles of *res judicata* and judicial economy because the plaintiff had in fact raised his state law claim at the first opportunity in federal court and had not received a judgment on the merits. *Id.* at 393. In other words, the plaintiff had done what he was supposed to do and had raised all claims arising out of the same transaction in the same proceeding, only to have one claim dismissed for lack of

jurisdiction. In such a case, it would be unfair to deny him a day in court on a claim that had been dismissed on jurisdictional grounds.

¶ 25 Unlike the claims at issue in *Nowak*, which were dismissed on jurisdictional grounds and not addressed on the merits, the claims raised by the Loan Parties in the prior federal court proceeding were disposed of on the merits. Indeed, as the Borrowers aptly describe it, the district court essentially conducted a "summary judgment" review of the Loan Parties' proposed counterclaims. It considered the facts alleged by the Loan Parties and the evidence that they presented in support and found that, even when disputed facts were construed in the Loan Parties' favor, the proposed claims were legally meritless. Contrary to the Borrowers' contention, this summary-judgment-type review was an adjudication on the merits of the claims related to the Lender's alleged breach of the Forbearance Agreement. See *Poulos v. Reda*, 165 Ill. App. 3d 793, 801 (1987) ("Summary judgment *** is the procedural equivalent of a trial and is an adjudication of the claim on the merits."). The Seventh Circuit then examined the merits again on appeal and held that the district court did not err in denying leave to file on the grounds that the claims were without merit. Thus, *Nowak* is inapposite.

¶ 26       The second case that the Borrowers rely upon is *Doherty v. Federal Deposit Insurance Corporation*, 932 F. 3d 978 (7th Cir. 2019). There, Washington Federal Bank sued Patrick Doherty, John Farano, Jr., and Worth Conversion, LLC, over Worth's default on a loan that had been personally guaranteed by Doherty and Farano. *Id.* at 980-81. In his answer to the bank's complaint, Doherty raised certain affirmative defenses. *Id.* at 981. The court then entered a default judgment against Farano. *Id.* Nine months later, Doherty provided the bank with proof that his signature on loan extension paperwork had been forged, and around that time the bank dismissed

Doherty and Worth from the action without prejudice. *Id.* A year later, Doherty filed suit in the Circuit Court for Cook County, Illinois, against the bank and certain employees and attorneys, alleging breach of contract, forgery, excessive fees, fraud, and legal malpractice against the bank's law firm. *Id.* He asserted that during the prior proceeding he did not learn about the bank's alleged forgery early enough to take action before being dismissed from the case. *Id.* On motion of the bank and its attorneys, the circuit court dismissed Doherty's amended complaint on *res judicata* grounds, finding that the claims should have been raised in the prior action. *Id.* The bank was placed into FDIC receivership, and the FDIC removed the case to federal court, where the district court adopted the Illinois circuit court's decision dismissing Doherty's amended complaint. *Id.* at 981-82.

¶ 27 On appeal, the Seventh Circuit held that *res judicata* did not bar Doherty's claims for two reasons. First, the dismissal of Doherty without prejudice from the prior proceeding following the entry of a default judgment against Farano "ensured that the bank never had to address or defend itself against Doherty's fraud allegations." *Id.* at 985. "[B]ecause the bank never had to address (and the circuit court likewise never had to consider) Doherty's fraud claims," the Seventh Circuit did not believe that "the default judgment against a different defendant barred Doherty's later action." *Id.* Second, the Seventh Circuit held that application of *res judicata* to bar Doherty's claims did not "advance the purposes of the doctrine." *Id.* Specifically, the court explained that one of the purposes of *res judicata* is to "prevent a second litigation from undermining the prior judgment," and Doherty's state court action only sought redress for the bank's alleged fraud and did not challenge the default judgment entered against Farano. *Id.* at 986. Thus, even if Doherty were successful in his action against the bank, the default judgment against Farano would not be disturbed. *Id.*

¶ 28 We find *Doherty* distinguishable from the present case for three reasons. First, unlike Doherty, whose subsequent action did not challenge issues that were finally decided in the prior proceeding, the Borrowers are seeking to relitigate issues that were specifically decided on the merits in the prior federal court action. Indeed, the Borrowers' specific-performance and breachof-contract claims are essentially identical to the proposed counterclaims that the federal courts addressed and determined were meritless in the prior action. Second, success for the Borrowers in the present action would undermine the final judgment rendered in the prior proceeding. The Borrowers' complaint in the instant action seeks a judgment that would be directly contrary to the federal courts' determination that the Lender did not breach the Forbearance Agreement and that there was, therefore, no impediment to the judicial sale of Arlington Place One to the Lender. In other words, issues that were finally determined on the merits in the prior proceeding are again at issue in the present action, placing the Borrowers' claims squarely within the bounds of *res judicata*. Third, unlike the bank in *Doherty*, which avoided defending Doherty's claims in the initial action by dismissing him from the case, the Lender here was required to defend against the Loan Parties' proposed counterclaims and argue why they were meritless.

¶ 29 Contrary to the Borrowers' arguments, we see no error in the circuit court's conclusion that the Borrowers' complaint is barred by *res judicata*. The doctrine bars relitigation of issues that were actually decided in a prior proceeding, as well as those that could have been decided in that proceeding. *River Park, Inc.*, 184 Ill. 2d at 302. The claims raised in the Borrowers' complaint are all based on the same core of operative facts, *i.e.*, the Lender's alleged breach of the Forbearance Agreement and its placement of the lien on the 1907 Property, and those facts were known to the Loan Parties, with whom the Borrowers are in privity, prior to the final judgment

confirming the foreclosure sale in the federal court action. See *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 11 (explaining that it is the order approving or confirming the foreclosure sale that is the final order concluding litigation in a foreclosure case). Thus, unlike the plaintiffs in *Nowak* and *Doherty*, the Loan Parties had the opportunity to raise the claims at issue in the prior proceeding. That alone allows for the application of *res judicata* to bar the Borrowers' claims. See *Altair Corp. v. Grand Premier Trust & Investment, Inc.*, 318 Ill. App. 3d 57, 63 (2000) (holding that the application of *res judicata* was not fundamentally unfair when the party had learned of the facts underlying the claim at issue prior to the final judgment in the previous proceeding and had the opportunity to supplement its pleadings in that prior case but failed to do so).

¶ 30 Additionally, beyond the fact that the Loan Parties had the ability to raise all three claims in the prior action, they did in fact raise two of them, and those two were disposed of on the merits and found to have been meritless. Relitigation of "what was actually decided in the first action" is unequivocally barred by *res judicata*. *River Park, Inc.*, 184 Ill. 2d at 302. To the extent that the Borrowers object to the district court's handling of the Loan Parties' motion for leave to file their counterclaims and its determination that their claims against the Lender were meritless, those matters should have been, and in fact were, raised on appeal in the federal action.

¶ 31     Accordingly, we affirm the circuit court's order dismissing the Borrowers' complaint.

¶ 32     Affirmed.